IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WILFORD R. NUNN,                    §
                                    §
                Plaintiff,          §
                                    § Civil Action No. 3:08-CV-1486-D
VS.                                 §
                                    §
STATE FARM MUTUAL AUTOMOBILE        §
INSURANCE COMPANY,                  §
                                    §
                Defendant.          §

MEMORANDUM OPINION
AND ORDER

In this suit arising from the denial of a claim for insurance
coverage based on the alleged theft of, and fire damage to, an
automobile, the court must decide whether the insurer is entitled
to partial summary judgment dismissing the insured's
extracontractual claims. For the reasons that follow, the court
grants the motion in part and denies it in part, and it in part
defers a ruling in order to permit the plaintiff-insured to file
additional briefing on grounds for partial summary judgment that
the court raises *sua sponte*.[1]

I

Plaintiff Wilford R. Nunn ("Nunn") sues defendant State Farm
Mutual Automobile Insurance Company ("State Farm"), alleging that
State Farm breached its insurance policy (the "Policy") with Nunn
and that State Farm is liable on extracontractual claims for

---

[1]The court also considers and denies as moot defendant's
December 8, 2009 motion for leave to file supplementary summary
judgment evidence. See *infra* at note 3.

denying coverage for the theft of, and fire damage to, a 2006 Range Rover Sport (the "Range Rover").  Nunn is the named insured under the Policy.  His daughter, Kristina Nunn ("Kristina"), was listed as the principal driver of the Range Rover.

Viewed favorably to Nunn as the nonmovant, the background facts are as follows.[2]  The Range Rover was purchased in Nunn's name for Kristina in March 2006 for the sum of $71,477.56 from a dealership in Maryland.  Kristina paid the down payment and most of the monthly payments, and Nunn paid the balance.  State Farm contends that 15 of the monthly payments were late; Nunn disputes this, asserting that the payments were always made within the grace period.  Also in March 2006 Kristina returned to Rowlett, Texas to live with her parents following her divorce.

On the night of June 13, 2007, between 9:30 and 11:00 p.m., Kristina parked the Range Rover in front of Nunn's house and locked the vehicle, setting the alarm.  Just before going to bed at 1:30 a.m., Nunn observed the Range Rover still parked in front of the house.  The next morning, Kristina discovered that the vehicle was missing.  Kristina telephoned the Rowlett Police Department ("RPD") and reported that the Range Rover had been stolen.  It was later

---

[2]In recounting the factual background, the court summarizes the evidence in the light most favorable to Nunn as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *E.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

learned that a Dallas Police Department officer had observed the vehicle at 2:28 a.m. parked at an apartment complex near Love Field in Dallas.  The officer had "run the tags" to verify that it was not shown as stolen.  At 3:22 a.m. and 3:34 a.m., respectively, the vehicle's Toll Tag registered at two toll booths.  At around 7:30 a.m., the Range Rover was found in the parking lot of a church in Coppell, Texas by an employee.  The Range Rover had been unsuccessfully burned, causing irreparable damage, and its contents were missing.  Kristina reported the missing contents as a laptop, 1,500 CDs, six DVDs, a Toll Tag, and $100 in cash.  But the vehicle had not been "stripped," meaning that the tires, rims, entertainment system, TV monitors, and leather seats remained.

The Range Rover did not show clear signs of forced entry. There was no broken glass, cut wires, or damage to the ignition, although there was "cosmetic" damage to the steering column.  When the Rowlett police arrived at Nunn's residence to investigate, they discovered a wire hanger in the street in front of the house, but, according to the Range Rover dealership, a wire hanger could not have unlocked or started this particular Range Rover.  The vehicle had an "immobilizer system" designed to prevent the vehicle from starting except by using one of two computer-programmed keys, one kept by Kristina and the other by Nunn.  It is undisputed that at all times both keys remained continuously in Kristina's and Nunn's possession.  The Range Rover's records indicate that no other

programmed keys were ever made for the vehicle.

The morning the car was discovered missing, Nunn informed his State Farm agent of the alleged theft.  On June 18 State Farm assigned an adjuster, Duke Stone ("Stone"), to investigate.  The RPD and the Coppell Fire Department ("CFD") also conducted investigations.  Detective Latham of the RPD reported to State Farm that he found no fraud indicators in his investigation.  But CFD investigator Michael Makela ("Makela") notified Stone that he suspected fraud.

On June 20 State Farm learned that Nunn and Kristina had refused to cooperate with Makela's investigation.  On June 22 Stone contacted Kristina to request the two programmed keys to the vehicle, an opportunity to inspect the vehicle, and Kristina's statement regarding the facts of the incident.  That same day, Stone retained an engineer to determine whether the Range Rover had been started by a device other than one of the two programmed keys. The engineer whom State Farm hired eventually determined that the car had not been started by a device other than the programmed keys and found that the car's alarm had not been triggered.  Nunn disputes the reliability of these conclusions.  On June 27 Stone investigated the vehicle.  By July 2 Nunn and Kristina had retained a lawyer.

In October State Farm and Nunn agreed to hold Nunn's Examination Under Oath ("EUO") on November 14.  Nunn's EUO did not

actually take place until one year later, in October 2008, after this lawsuit was filed.  Kristina repeatedly refused State Farm's requests to submit to an EUO, but in December 2008 State Farm took Kristina's deposition as part of this lawsuit.  In January 2009 State Farm denied Nunn's claim under the Policy.

Nunn sues State Farm, alleging claims for breach of the insurance policy, breach of the common law duty of good faith and fair dealing, and various violations of the Texas Insurance Code. In particular, Nunn asserts that State Farm violated Tex. Ins. Code Ann. §§ 541.051 and 541.061 by misrepresenting the Policy, violated § 542.003 by engaging in unfair settlement practices, and violated §§ 542.055—.058 by conducting a tardy investigation and denial of his claim.  State Farm moves for partial summary judgment dismissing Nunn's extracontractual claims.[3]

## II

When the summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once it does so, the nonmovant must go

---

[3]State Farm filed a supplementary appendix in support of its summary judgment motion reply brief.  In response to the court's order stating that it would not consider the reply appendix because State Farm had not obtained leave to file it, State Farm moved for such leave.  Because the evidence in the supplementary appendix would not, if considered, affect today's decision, the court denies the motion as moot.

beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court considers first Nunn's claim for breach of the common law duty of good faith and fair dealing.

A

Under Texas law, there is a duty on the part of an insurer to deal fairly and in good faith with an insured in processing and paying claims. This duty arises from the inherent power imbalance between the insurer and the insured. *See Arnold v. Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987).

> [A]n insurer breaches its common law duty of good faith and fair dealing by denying or delaying payment of a claim if the insurer knew or should have known it was reasonably clear the claim was covered. A bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. Instead, the insured must show that

- 6 -

> the insurer had no reasonable basis for
> denying or delaying payment of the claim.

*JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. Appx. 744, 747 (5th Cir.
2009) (per curiam) (internal quotations, citations, and alterations
omitted).   Insurers have the right to deny questionable claims
without being subject to liability for an erroneous denial.   *See,
e.g., St. Paul Lloyd's Ins. Co. v. Fong Chun Huang*, 808 S.W.2d 524,
526 (Tex. App. 1991, writ denied) (citing *Aranda v. Ins. Co. of N.
Am.*, 748 S.W.2d 210, 213 (Tex. 1988)).   A bona fide controversy is
sufficient reason for an insurer's failure to make a prompt payment
of a loss claim.   *Id.*   So long as the insurer has a reasonable
basis to deny or delay payment of a claim, even if that basis is
eventually determined by the factfinder to be erroneous, the
insurer is not liable for the tort of bad faith.   *Lyons v. Millers
Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993).   Whether an
insurer acted in bad faith because it denied or delayed payment of
a claim after its liability became reasonably clear is a question
for the factfinder.   *Universe Life Ins. Co. v. Giles*, 950 S.W.2d
48, 56 (Tex. 1997).   Even so, there still may be circumstances
where judgment can be rendered as a matter of law because there are
no genuine issues of material fact.   *See id*.

Nunn alleges that State Farm acted in bad faith by denying his
claim and by failing to effect a prompt and fair settlement of the
claim.   The law recognizes that an insurer has a duty to deal
fairly and in good faith with the insured both in the processing of

a claim and in the ultimate coverage decision.  *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) ("An insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims.").  It is possible to breach the good faith duty in the processing of a claim but not in the coverage decision.  *See id.* at 341 ("We do not exclude, however, the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim.").

B

The court turns first to the denial of Nunn's claim.  "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."  *Id*. This general rule cannot be applied to State Farm's denial of Nunn's claim because State Farm did not move for summary judgment on his breach of contract claim, and the question whether the loss of the Range Rover is covered under the Policy remains to be resolved.  Instead, State Farm argues that the bona fide dispute rule precludes extracontractual bad faith liability for the denial of the claim.

"Whether there is a reasonable basis for denial of a claim must be judged by the facts before the insurer at the time the claim was denied."  *Id.* at 340 (citing *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)).  It is an "objective

determination" involving whether "a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits." *Id.* (internal quotation marks omitted). So long as a reasonable basis for denial of the claim exists——even if it is not the actual reason on which the insurer relied in denying the claim——the insurer will not be subject to liability for an erroneous denial of a claim. *Id.* (holding insurer was not liable for denying claim for incorrect reason when there was correct reason for denial). Texas courts have cautioned that "Courts should be careful to ensure that the bad faith action is reserved for cases of flagrant denial or delay of payment where no reasonable basis existed, and not for mere unreasonable denial or delay." *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 287 (Tex. App. 1992, writ denied).

State Farm posits that it had a reasonable basis for believing the loss of the Range Rover was not accidental: that Nunn and/or Kristina committed fraud by faking the theft and arson of the Range Rover. The court holds that a reasonable jury could only find that State Farm possessed sufficient circumstantial evidence to support a reasonable good faith belief that the insured had the opportunity and motive to cause the loss to the Range Rover. *See id.* at 282 (noting that arson may be proved through circumstantial evidence, i.e., that "the fire had an incendiary origin and that the insured had an opportunity and a motive to set it."). State Farm possessed

evidence that the only way the Range Rover could have been driven through the two toll booths the night of the alleged theft was by using one of the two authorized keys indisputably in the Nunns's possession. Additionally, the apparent absence of forced entry into the vehicle, the evidence that the Range Rover's alarm had not been triggered, and the undisputed fact that the expensive vehicle was not "stripped" could reasonably have led State Farm to conclude in good faith that the Range Rover was not stolen.

As for motive, State Farm possessed evidence that Nunn's monthly income was incorrectly overstated in his application to purchase the Range Rover[4] and that Nunn and/or Kristina had been late on 15 payments. Given these facts, of which State Farm was aware when it made the coverage decision, State Farm had an objectively reasonable basis to dispute the validity of Nunn's claim. There was a bona fide dispute between the parties that justified State Farm's failure to pay Nunn. A reasonable jury could not find that State Farm acted in bad faith in denying Nunn's claim.

---

[4]State Farm need not conclusively establish whether the overstatement was Nunn's fault or the fault of a dealership employee. The fact of the overstatement corroborates State Farm's objectively good faith belief that the vehicle was not stolen but was burned in an attempt to sustain a total loss that would pay off all or most of the indebtedness on the vehicle.

C

Nunn also alleges that State Farm conducted a bad faith investigation of the claim.  Nunn points out several flaws in State Farm's investigation and asserts that State Farm conducted the investigation in a manner calculated to construct a pretext for denial.

An insurer cannot escape liability by performing an inadequate investigation.   Within the duty of good faith is an insurer's obligation to conduct an adequate investigation of a claim.  *See United Serv. Auto. Ass'n v. Croft*,  175 S.W.3d 457, 469 (Tex. App. 2005, no pet.).   "[A]n insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial."  *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).   Similarly, an insurer cannot escape liability by "failing to investigate a claim so that it can contend that liability was never reasonably clear." *Giles*, 950 S.W.2d at 56 n.5.

According to the summary judgment evidence, the night before the Range Rover went missing, Kristina stopped at a local gas station and was frightened by three men who loitered near her without purchasing gas.  Kristina was so alarmed that her parents met her at the station and followed her home.  Nunn suggests that these men could have stolen the Range Rover.  Nunn also suggests that Kristina's ex-husband could have been involved.  State Farm

made no effort to find or interview these potential suspects. Additionally, Nunn points to the potential mishandling of evidence by the CFD investigator and a technician hired by State Farm to inspect the vehicle. Finally, Nunn argues that the coverage decision was unreasonably delayed for 18 months based on State Farm's assertion that it needed a recorded statement from Kristina before making a decision, which Nunn argues was not required under the terms of the Policy.

A reasonable jury could not find on the basis of Nunn's evidence that State Farm acted in bad faith. As to the men loitering at the gas station, Texas courts have clarified that the insurer does not have a "duty to leave no stone unturned." *Polasek*, 847 S.W.2d at 288 (noting that "Even the most thorough investigation must stop somewhere; there is always something else the investigators could have done."). State Farm could reasonably have believed the lack of evidence of forced entry indicated that involvement of the three strangers was unlikely. State Farm could also reasonably have decided not to focus on Kristina's ex-husband because he lived in Virginia at the time of the alleged theft. Further, Kristina told Stone just five days after the incident that she had no enemies and knew of no suspects.

Additionally, any alleged negligence on the part of the CFD cannot be imputed to State Farm. Even considering the possible mishandling of evidence by a State Farm-hired technician, Nunn

presents no evidence that the mishandling was intentional or that State Farm pursued its investigation in bad faith by in any way directing the technician to prevent recovery of further evidence.

Finally, a reasonable jury could not find that State Farm's decision to withhold a claim determination until after it interviewed Kristina, the driver of the Range Rover, was indicative of bad faith.  The jury could only reasonably find that State Farm believed it needed to conduct the interview of this central figure before it made a coverage decision, and that it was Kristina who delayed giving a sworn statement.  State Farm first requested a recorded statement from Kristina on June 19, 2007, just five days after the incident; Kristina ultimately gave a deposition, not an official EUO, in December 2008.

Nunn argues that, under the Policy, Kristina was not required to submit to an EUO, and therefore that the delay in securing her statement was not a reasonable basis for delaying the coverage decision.  Nunn's interpretation of the Policy may be correct.  The Policy provides that "[a] person seeking coverage must . . . when required by [State Farm]: submit a sworn proof of loss [and] submit to an examination under oath."  D. App. 155.  The term "a person seeking coverage" is not defined in the Policy, and it can reasonably be construed (and, if ambiguous, must be construed in favor of Nunn as the insured) to refer only to the named insured (Nunn), not to a driver who is not also the named insured

(Kristina).   But there is no proof of bad faith where "[the] evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, *or about the proper construction of the policy.*"  *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994) (emphasis added).  Kristina not only was listed on the Policy as the principal driver of the Range Rover, she paid the down payment and most of the monthly payments, and she had a direct pecuniary interest in recovering insurance proceeds for the loss of the vehicle.  Assuming that State Farm incorrectly interpreted the Policy to require that Kristina submit to an EUO, a reasonable jury could only find that State Farm was merely mistaken about the proper construction of the Policy.

Moreover, Nunn, the named insured, likewise did not submit to an EUO for 16 months, even though he admits that State Farm requested his recorded statement 19 days after the claim was reported.  A jury could only reasonably find that State Farm's delay in determining coverage was reasonable on this basis as well.

A reasonable jury could only find that State Farm conducted a lengthy and in-depth investigation of Nunn's claim, relying in part on uncontroverted evidence in making its coverage determination. Cases finding that insurers pursued investigations in bad faith often center on coverage denials that followed little or no investigation, which is certainly not the case here.  *See Tex. Mut. Ins. Co. v. Morris*, 287 S.W.3d 401, 411 (Tex. App. 2009, pet.

filed) (affirming jury verdict finding breach of good faith duty to investigate when evidence demonstrated no more than a "cursory inquiry"). Nunn has presented no evidence that would enable a reasonable jury to find that State Farm "intentionally prolonged the investigation or that . . . it gave [Nunn] false reasons for the delay." *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 780 (Tex. 2006). Therefore, the court holds that a jury could not reasonably find that State Farm breached the common law duty of good faith and fair dealing. State Farm is entitled to summary judgment dismissing this claim.

IV

The court next considers Nunn's claim for breach of Tex. Ins. Code Ann. §§ 541.051[5] and 541.061,[6] which prohibit

---

[5]Section 541.051 provides, *inter alia*:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:
(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:
    (A) the terms of the policy;
    (B) the benefits or advantages promised by the policy; or;
    (C) the dividends or share of surplus to be received on the policy.

[6]Section 541.061 provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the

- 15 -

misrepresentations with respect to the Policy.  Nunn's complaint is
not specific regarding the alleged misrepresentations, but his
response to State Farm's motion for partial summary judgment
suggests that Stone made a misrepresentation by indicating that
Kristina's refusal to submit to a recorded statement/EUO could be
a basis for denying coverage under the Policy's duty to cooperate.
State Farm's attorney also indicated in a letter to Kristina's
attorney that the Policy required Kristina's EUO.

In its reply brief, State Farm responds to this allegation by
noting that Nunn failed to present any evidence regarding how the
alleged misrepresentations damaged him.  Nunn has the burden of
showing that State Farm's misrepresentations were a producing cause
of damages.  *See, e.g., Carper v. State Farm Lloyds*, 2002 WL
31086074, at *8 (N.D. Tex. Sept. 13, 2002) (Lynn, J.).  Because
State Farm waited until its reply brief, however, to point to the

---

business of insurance to misrepresent an
insurance policy by:
(1) making an untrue statement of material
fact;
(2) failing to state a material fact necessary
to make other statements made not misleading,
considering the circumstances under which the
statements were made;
(3) making a statement in a manner that would
mislead a reasonably prudent person to a false
conclusion of material fact;
(4) making a material misstatement of law; or
(5) failing to disclose a matter required by
law to be disclosed, including failing to make
a disclosure in accordance with another
provision of this code.

- 16 -

absence of evidence of damages caused by the alleged misrepresentations, Nunn has not had an opportunity to respond.

The court can raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords the nonmovant notice and a fair opportunity to file an opposition response. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).  The court therefore raises *sua sponte* that State Farm is entitled to partial summary judgment dismissing Nunn's claim for breach of Tex. Ins. Code Ann. §§ 541.051 and 541.061 because Nunn cannot prove that the alleged misrepresentations caused him any damages.  If Nunn desires to oppose summary judgment on this basis, he must file a supplemental brief, and an appendix that contains any supporting evidence, within 30 days of the date this memorandum opinion and order is filed.  If he does not, the court will grant summary judgment in favor of State Farm dismissing this claim.  If Nunn does respond, the court will determine whether to request a reply brief from State Farm.

V

Nunn also alleges that State Farm engaged in unfair claim and settlement practices by the manner in which it investigated and denied Nunn's claim, in violation of Tex. Ins. Code Ann.

§ 542.003.[7]  Section 542.003 is quite general and incorporates both a prohibition of policy misrepresentations and a prohibition of bad faith in settling a claim when liability has become reasonably clear, as specified in § 542.003(b)(1) and (b)(4), respectively. Because the court has granted summary judgment in favor of State

---

[7]Section 542.003 provides:

> (a) An insurer engaging in business in this state may not engage in an unfair claim settlement practice.
> (b) Any of the following acts by an insurer constitutes unfair claim settlement practices:
>> (1) knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue;
>> (2) failing to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the insurer's policy;
>> (3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies;
>> (4) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear;
>> (5) compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder;
>> (6) failing to maintain the information required by Section 542.005; or
>> (7) committing another act the commissioner determines by rule constitutes an unfair claim settlement practice.

Farm on Nunn's bad faith claim, his claim under § 542.003(b)(4) prohibiting bad faith must fail as well. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (Tex. 1997) ("Although [claims under the Texas Insurance Code] are individual causes of action which do not depend on each other for support, Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas.").

But because the court has yet to consider additional briefing that may be filed concerning the issue of policy misrepresentations, it cannot yet reach a conclusion about whether State Farm is entitled to summary judgment dismissing Nunn's claim under § 542.003(b)(1).

VI

The court next addresses Nunn's allegation that State Farm failed to promptly pay Nunn's claim upon notice of the claim, in violation of Tex. Ins. Code Ann. §§ 542.055-.058.

A

Nunn notified State Farm of the claim on June 14, 2007, the day the Range Rover was discovered missing. Under the Code, State Farm had 15 days to acknowledge receipt of the claim, commence its investigation, and request from Nunn all items, statements, and forms that State Farm then reasonably believed would be required from Nunn. Nunn asserts that State Farm failed to request all

- 19 -

necessary items by the 15-day deadline.  In particular, he contends that State Farm did not request his statement or EUO or information relating to the purchase of the vehicle.

Courts are directed to liberally construe the Code to achieve prompt payment of insurance claims.  *See* Tex. Ins. Code Ann. § 542.054 (Vernon 2009); *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 829 (Tex. App. 2008, no pet.) (construing Article 21.55 § 8, predecessor to § 541.008[8]).  But case law has also made clear that *all* information necessary need not be requested by the 15-day deadline; if the insurance company's "investigation reveals that additional information is needed from the claimant, the insurer may make additional requests." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 19 (Tex. 2007); *see also* Tex. Ins. Code Ann. § 542.055(b) (Vernon 2009) ("An insurer may make additional requests for information if during the investigation of the claim the additional requests are necessary.").

Stone did request Kristina's statement before the deadline, but he waited until at least four days after the deadline to request Nunn's statement.  The question whether State Farm reasonably believed at the time of the 15-day deadline that it

---

[8]*See Lamar Homes v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007) (noting that Tex. Ins. Code Ann. art. 21.55 has been recodified without substantial change as Tex. Ins. Code Ann. §§ 542.051-.061).

would not need Nunn's statement, or that it would not need information relating to the purchase of the vehicle, presents a genuine issue of material fact for the jury. Stone had notified Nunn in advance of the 15-day deadline that State Farm questioned whether the Range Rover was stolen. State Farm may already have suspected that a statement would be needed from Nunn, the owner of the vehicle and the named insured. By pointing to these specific pieces of information that State Farm quickly determined were in fact necessary, Nunn has presented sufficient evidence of delay under § 542.055 to deny summary judgment.[9]

B

Nunn also alleges that State Farm failed to deny his claim within 30 days after State Farm received all information required for the investigation, in violation of § 542.056(b), which applies specifically to losses resulting from arson.[10]

State Farm did not deny Nunn's claim until January 16, 2009. Nunn points out that Stone concluded on March 27, 2008 that the Range Rover was not stolen. Nunn argues that the only information

_____

[9]Unlike his claims under Tex. Ins. Code Ann. §§ 541.051, 541.061, and 542.003, Nunn's claim under § 542.055 does not require that he prove any particular harm or damages. Damages for violations of § 542.055 are specified by statute. *See* Tex. Ins. Code Ann. §§ 542.058 and 542.060 (mandating interest on amount of claim at rate of 18% per annum as damages for delay in addition to reasonable attorney's fees).

[10]State Farm and Nunn both accept that the longer 30-day time frame allowed in cases of arson applies here. *See* D. Br. 23; P. Br. 17.

that State Farm lacked during its investigation was Kristina's recorded statement, which she gave in her deposition on December 2, 2008. State Farm would therefore have had until January 1, 2009 to deny the claim within the statutory limits. State Farm argues that it did not have all the information needed to deny the claim until it received bank records confirming the number of late payments on the Range Rover. State Farm does not specify what day these records were received.[11] State Farm received bank records in response to a subpoena on December 1, 2008, more than 30 days before it denied the claim. In addition, State Farm received answers to written questions submitted to the bank, but these were not completed until January 21, 2009, after the claim was denied, and thus could not have justified the delay in denying the claim.

Because Nunn has adduced evidence that State Farm denied his claim more than 30 days from the receipt of all the evidence necessary to secure proof of loss, the court denies summary judgment dismissing Nunn's § 542.056-based claim.[12]

---

[11]The only record citation that State Farm provides is incorrect.

[12]As with Tex. Ins. Code Ann. § 542.055, damages for Nunn's claim under § 542.056(b) are specified by §§ 542.058 and 542.060. *See supra* at note 9.

* * *

Accordingly, the court grants in part and denies in part State Farm's September 30, 2009 motion for partial summary judgment, and it permits Nunn to file a supplemental brief and appendix as set out *supra* at § IV.  The court denies State Farm's December 8, 2009 motion for leave to file supplementary summary judgment evidence as moot.

**SO ORDERED.**

June 23, 2010.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 23 -