IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILFORD R. NUNN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:08-CV-1486-D |
| | § | |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
FOR LEAVE TO FILE SECOND AMENDED ANSWER PURSUANT TO FRCP 16(b) TO
INCLUDE COUNTERCLAIM**

**TABLE OF CONTENTS**

1.00   FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Granting Partial Summary Judgment Does not Justify a Late     Frivolous Action Counterclaim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Paez's Alleged Involvement in the Theft is Not a New Revelation     for State Farm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2.00   DEFENDANT FAILS TO CONNECT THE DOTS FROM NUNN TO LUMSDEN. . . . . . . . . . . . . . 5

3.00   STATE FARM COULD HAVE EASILY COMPLIED WITH THE SCHEDULING ORDER. . . . . . . . 7

    A.    State Farm's Explanation Does Not Establish Diligence or an     Inability to Comply with the Scheduling Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.    Defendant overstates Nunn's knowledge of Lumsden's     criminal record 9

        2.    Legitimate and sustained objections to the discovery of     phone records is not concealment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.    Lumsden paying for Paez's lawyer does not show Nunn's     extra-contractual claims were frivolous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        4.    Lumsden paying for Paez's replacement car does not show Nunn's extra-

contractual claims were frivolous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5.    In summary, State Farm's lack of diligence is totally inexcusable.  . . . . 14

B.    Importance of Amendment: Giving State Farm its Requested          Late
Amendment Would be Approval of Litigation Abuse . . . . . . . . . . . . . . . . . . . . . 15

C.    Allowing Amendment to Assert a Counterclaim Prejudices Nunn.  . . . . . . . . . 17

D.    A Continuance Will Not Cure Nunn's Prejudice and Will Only          Ratify State
Farm's Tardy Behavior. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4.00   DEFENDANT CANNOT SATISFY RULE 15(A)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.00   PRAYER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

CASES

*Am. Troumaline Fields v. Int'l Paper Co.*, No. 3:96-CV-3363-D, 1998 WL 874825 (N.D. Tex. Dec. 7, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 17

*E.E.O.C. v. Serv. Temps, Inc.*, No. 3:08-CV-1552-D, slip op. (N.D. Tex. Oct. 13, 2009) . 7, 8, 15

*In re Roqumore*, No. 06-36406, slip op. (Bkrtcy. S.D. Tex. Jan. 8, 2010) . . . . . . . . . . . . . . . . . 8

*Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604 (9th Cir .1992) . . . . . . . . . . . . . . . . . . . . . 8

*Rowell v. Metropolitan Life Ins. Co.*, No. H-10-0164, slip op. (S.D. Tex. Jul. 14, 2010) . . . . . . 16

*S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533 (5th Cir. 2003) . . . . . . . . 7

*Young v. Brand Scaffold Services, LLC*, No. 1:07-CV-917, slip op.(E.D. Tex. Feb. 24, 2009) . 18

RULES

FED. R. CIV. P. 15(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FED. R. CIV. P. 16(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILFORD R. NUNN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:08-CV-1486-D |
| | § | |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER PURSUANT TO FRCP 16(b) TO INCLUDE COUNTERCLAIM

The Defendant began breaking and stretching the rules for claims handling and fulfilling its contractual obligations soon after Nunn reported the theft of his vehicle. Since the filing of this lawsuit, Defendant has filed approximately six motions asking that existing rules and deadlines be modified. Now Defendant is doing so again by asking for a change in its pleadings that dramatically alters the posture of this case.

Defendant has had over two years to make a counterclaim. Lumsden's testimony did not change its theory of the case. Its theory has been and presumably always will be that Nunn's daughter and Nunn stole the Range Rover at issue. Simply put, Lumsden's testimony did not cause State Farm to suddenly decide Nunn's claims were frivolous, it has always contended Nunn's claims were frivolous and without merit. Nunn asks this Court to deny Defendant's extremely late request.

### 1.00    FACTUAL AND PROCEDURAL BACKGROUND

This Court is well acquainted with the facts of this case as this is the second time State Farm

has asked to amend its pleadings after the deadline for amendment passed. (Documents 161, 162 and 203.) In response to Defendant's first request for untimely amendment, the Court found State Farm could not adequately explain its failure to timely move for amendment but ultimately allowed Defendant to amend anyway based on other factors. (Document 172.) Now, nearly two years after the deadline to amend pleadings expired, Defendant again asks this Court to allow it to amend its answer— only this time Defendant asks this Court to let it assert a counterclaim against Nunn.

Defendant claims its late amendment to assert a counterclaim under Texas Insurance Code § 541.153 for frivolous action is justified for essentially two reasons: (1) the Court granted summary judgment on Nunn's extra-contractual claims; (2) some allegedly carefully orchestrated plot to conceal the existence of Raymond Lumsden who claims Paez, who is not a person seeking coverage, was involved in the theft of the vehicle.

Neither Defendant's two "reasons" actually support allowing Defendant to amend adding an entirely new claim against Nunn. First, the Court granting summary judgment on the extra-contractual claims in June and November does not justify the a counterclaim. Second, although Lumsden was a new witness, his testimony only fit into State Farm's existing theory of the case that Paez and/or Nunn stole the car.

State Farm's requested counterclaim alleges Nunn's extra-contractual claims were frivolous. According to State Farm, Nunn filed a lawsuit claiming State Farm acted in bad faith despite knowing Lumsden and/or Paez committed the theft/arson and, therefore, filed a frivolous action. If Nunn's knowledge of who committed the theft at the time of filing his lawsuit makes his extra-contractual claims frivolous, then State Farm should have requested leave to amend its answer and add this counterclaim before the scheduling order deadline expired or at least when it requested leave

to late amend the first time. State Farm claimed Nunn knew who stole the car (and in fact alleged he was involved in the theft himself) when it denied this claim on January 16, 2009 — two weeks before the deadline to amend pleadings. It could have and should have claimed Nunn's extra-contractual (and the rest of his claims for that matter) were frivolous then.

## A.  Granting Partial Summary Judgment Does not Justify a Late Frivolous Action Counterclaim.

This Court has not granted final summary judgment, disposing of all causes and all parties. Nunn's breach of contract claim against Defendant survives. In June 2010, it issued an order which granted summary judgment on some, but not all, of Nunn's extra-contractual claims. (Document 177 at 19-23.) His claims for violation of the Texas Insurance Code § 542.055 and 542.056 survived summary judgment. (Document 177 at 19-23.) In other words, this Court found a genuine issue of material fact existed on those claims and, therefore, State Farm cannot use the grant of partial summary judgment to justify its contention that all of Nunn's claims were frivolous.

Moreover, even if granting summary judgment on some of the extra-contractual claims could justify a frivolous action counterclaim, Defendant does not explain why it waited five months to file its motion for leave. This Court granted summary judgment on the majority of Nunn's extra-contractual claims in June 2010. (Document 177.) And although it issued secondary, related order on one of the disputed bad faith claims in November, Defendant was well aware of the Court's intention to grant summary judgment on the straggling bad faith claim based on the Court's statements to that effect in the June 2010 Order. (Document 177 at 16-17).

## B.  Paez's Alleged Involvement in the Theft is Not a New Revelation for State Farm.

State Farm would have this Court believe some alleged conspiracy to conceal the existence

of Raymond Lumsden changed how State Farm viewed this case.  Nothing could be farther from the truth.  Lumsden did not reshape this case.  The less than credible testimony of this ex-convict and circumstances surrounding his appearance as a witness in this case only fit into State Farm's existing theory about this case— namely that Paez was involved in the theft and Nunn knew it.

Defendant State Farm has always adamantly claimed Paez and/or Nunn stole the Range Rover.  Its claim file contains multiple statements like:

- <u>January 21, 2008</u>:  "Engineer and Land Rover tech have advised that there is no indication that the IV was stolen as reported."

- <u>March 27, 2008</u>: "Based on the above information, it does not appear the IV was stolen, and was damaged by an/or at the direction of the NI's."

- <u>December 29, 2008</u>: "That means that one or both of the Nunns were complicit in taking and burning the vehicle."

- <u>January 19, 2009</u>: "Based on the information obtained to date, it does not appear the reported theft loss occurred as reported, and/or the damages were caused by the NI's or at their direction."

(Pl. App. at 2-15).

State Farm's pleadings carry the same theme, and repeatedly refer to or insinuate State Farm believes Paez and/or Nunn stole the Range Rover.  For example:

- <u>May 20, 2009</u>: "This case involves a suspicious June 13, 2007 theft and arson of a 2006 Range Rover . . . Due to the presence of [] fraud factors, State Farm denied Mr. Nunn's claim for the incident."  (Document 47 at 1-2)

- <u>September 30, 2009</u>: ". . . information compiled by State Farm during its investigation strongly indicates that the loss to the Insured Vehicle did not result from a direct and accidental loss as required by the policy."  (Document 87 at 15)

- <u>October 2, 2009</u>: "Ultimately, State Farm denied Nunn's theft claim on the basis that, *inter alia*, the theft of the Range Rover was staged."  (Document 89 at 3)

- <u>January 2010</u>: ". . .the loss was the result of the fraud of Plaintiff Nunn."  (Joint

Pretrial Order at 2)

- February 26, 2010: ". . . Plaintiff caused the theft and attempted arson of his Insured Vehicle. . . ." (Document 162 at 2)

- July 19, 2010: ". . . there is no coverage afforded for the incident as the loss was the result of the fraud of Plaintiff Nunn who colluded with daughter Kristina Nunn in the theft and arson of Insured Vehicle. . . ." (First Amended Joint Pretrial Order at 2)

- July 19, 2010: Request for jury questions on fraud and arson. (Document 179)

State Farm has not shown this Court any evidence Nunn knew Lumsden and/or Paez were involved in the theft prior to bringing his extra-contractual claims. The evidence actually shows State Farm knew about Lumsden's potential involvement in the Range Rover theft before Nunn learned Lumsden was anything more than someone who dated Paez's for three or four months at the time of the theft. (Pl. App. at 31-33, 37).

Clearly, State Farm believed Paez committed this theft from the claim's inception and believed Nunn may have been involved. If Nunn were involved with the theft, his bad faith claims (and the rest of his claims for that matter) would be frivolous because he would have known who committed the theft/arson all along. So, while it may have gained new evidence of Paez's involvement through Lumsden, Lumsden's testimony did not change its theory of the case and did not suddenly provide State Farm with information showing Nunn made false bad faith accusations.

## 2.00    DEFENDANT FAILS TO CONNECT THE DOTS FROM NUNN TO LUMSDEN.

State Farm cannot connect the dots and show Nunn knew Lumsden and/or Paez stole the Range Rover at the time he brought his lawsuit making extra-contractual claims. Whether Lumsden stole the car, Paez stole the car, or they both stole the car does not matter. Nunn, not Paez, is the person seeking coverage under the policy at issue. And Nunn's, not Paez's, knowledge of Lumsden

and/or Paez stealing the Range Rover must be established to justify allowing State Farm to amend and assert a counterclaim nearly two and a half years into this action.

None of the evidence cited by Defendant shows Nunn knew anything about Lumsden and/or Paez stealing and burning the car. The closest State Farm gets is arguing Nunn should have somehow divined Lumsden's involvement and reported Lumsden to the investigating authorities because he knew Lumsden had a criminal record in the past. *Defendant's Motion* at 4-5. If you follow State Farm's once a criminal, always a criminal mentality Nunn should have probably also provided State Farm with the names of every person in his life that has ever been convicted of any crime be it friend, neighbor, cousin, aunt, uncle, co-worker, or the very people Nunn arrested as a police officer.

Nunn's testimony is clear. He knew nothing about Lumsden and/or Paez being involved in the theft of the Range Rover until July 23, 2010, after this Court dismissed the majority of his extra-contractual claims. He testified:

> Q. So on July 23rd between 12:30 and 2:30, Mr. Lumsden showed up on your doorstep and you described his condition as upset, angry, crying, and threatening suicide?
>
> A. Yes.
>
> Q. Tell us what he said to you specifically that day you opened the door and found him on your doorstep.
>
> A. He said he's – he's upset. That he hadn't been able to get in contact with her. He said he didn't know where the relationship stood. She won't call him. He said he was upset by what he had found out at her previous employer. And then he said he didn't know how to cope with her loss and he couldn't live without her. He was desperate to continue the relationship or do whatever he could to make it better. Then he said she wasn't the princess that we knew her to be and that she was involved in the theft and arson of the Range

Rover.

\* \* \*

Q.  Why did the meeting [on July 23, 2010] end after 45 minutes to an hour?

A.  During that time that he had said that about the Range Rover, I – I told him immediately that that's new information and that Detective Latham needs to be contacted immediately and you need to give a statement.

(Pl. App at 28-30).

State Farm cannot contradict this testimony and, therefore, cannot connect the dots between Lumsden's knowledge of Paez's involvement in the theft to Nunn at any time prior to July 23, 2010.

## 3.00   STATE FARM COULD HAVE EASILY COMPLIED WITH THE SCHEDULING ORDER.

In considering State Farm's request to amend its answer, this Court must first decide whether good cause exists to modify the scheduling order. FED. R. CIV. P. 16(b)(4); *E.E.O.C. v. Serv. Temps, Inc.*, No. 3:08-CV-1552-D, slip op. at 1 (N.D. Tex. Oct. 13, 2009)(Fitzwater, C.J.)(citations omitted). In order to show good cause, the moving party must show it "could not have reasonably met the scheduling order deadline" despite its diligence. *Id.* Only when the moving party satisfies the Rule 16(b)(4) good cause standard, will the court determine if it should grant leave to amend under the more liberal standard of Rule 15(a)(2). *Id.*

In determining whether good cause exists, the Court looks to four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003).  The diligence of the moving party is the focus of Rule 16(b)(4)'s good cause standard.

*E.E.O.C. v. Serv. Temps, Inc.*, No. 3:08-CV-1552-D, slip op. at 1 (N.D. Tex. Oct. 13, 2009)
(Fitzwater, C.J.)(citations omitted); *Am. Troumaline Fields v. Int'l Paper Co.*, No. 3:96-CV-3363-D,
1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998)(mem. op.)(Fitzwater, C.J.)(citations omitted).

Recently, the United States Bankruptcy Court for the Southern District of Texas discussed
Rule 16(b)(4)'s diligence requirement and the four-factor good cause test. *In re Roqumore*, No. 06-
36406, slip op. at 1 (Bkrtcy. S.D. Tex. Jan. 8, 2010).  It explained that although the four factors are
helpful, the good cause inquiry should end if the moving party was not diligent.  *Id.* (citing *Johnson
v. Mammoth Recreations Inc.*, 975 F.2d 604, 610 (9th Cir .1992)).

State Farm failed to establish it could not have reasonably met the Scheduling Order deadline
and this Court should not look past its lack of diligence to consider the other good cause factors.
Alternatively, even considering all four factors, State Farm failed to show good cause.  Its
explanation is inaccurate, misrepresentative, and inadequate.  Allowing this new, substantive
amendment of a counterclaim unfairly prejudices Nunn.  Finally, Nunn is not asking for a
continuance as any relief a continuance could provide would ratify Defendant's ambush pleading
tactics.

For these reasons, Nunn asks this Court to deny Defendant's motion.

A.      **State Farm's Explanation Does Not Establish Diligence or an Inability to Comply with
        the Scheduling Order.**

The deadline to request leave to amend pleadings expired on February 1, 2009. (Document
12.)  State Farm cannot give an adequate explanation for its failure to timely amend to add a
counterclaim prior to the deadline to request leave to amend.  To the contrary, the evidence shows
it could have reasonably complied with the scheduling order deadline and did not exercise diligence

in requesting leave to amend.

State Farm provides an inaccurate, misrepresentative, and inadequate explanation for its failure to timely request leave to amend its pleadings. It claims "purposeful concealment" of Lumsden explains its failure to timely amend. It explanation is based on four "concealment" allegations: (1) Nunn failed to tell authorities Paez was dating a man with a criminal history; (2) Paez and Nunn fought production of Paez's cell phone records; (3) Paez failed to disclose Lumsden paid a retainer for her attorney; and (4) Paez did not testify Lumsden gave her money for the down payment of a vehicle she drove after the Range Rover was stolen. *Defendant's Motion* at 4-7. Only two of those allegations even relate to Nunn and none of the allegations explain why Defendant should now get to add a counterclaim alleging Nunn filed a frivolous action.

### 1.    *Defendant overstates Nunn's knowledge of Lumsden's criminal record.*

Defendant's Motion insinuates Nunn knew Lumsden was a felon at the time of the theft and throughout the course of this litigation. *See Defendant's Motion* at 2. Nunn's testimony states otherwise:

> Q. So you were aware of his criminal history pretty much from the inception of his relationship with your daughter?
>
> A. Not all of his criminal history but just what he had – problems as a juvenile. That's all–
>
> Q. Okay.
>
> A. – that we knew.
>
> Q. Tell us what Mr. Lumsden disclosed to you initially regarding his criminal history.
>
> A. That in the early '90s he had some problems as a juvenile and was certified as an adult and did some time.

> Q.  When you say "problems as a juvenile," what sort of offenses did
> Mr. Lumsden –
>
> A.  He mentioned something about a harassment.  That's – that's the
> best of my knowledge.

(Pl. App. at 19-20.)  Defendant's citation to Nunn's testimony about Lumsden's criminal history

conveniently cuts off before he explained why he did not think to tell authorities or State Farm about

Lumsden. *Defendant's Motion* at 4-5.  The explanation State Farm did not want to highlight for the

Court is bolded below:

> Q.  Did you ever tell anyone from State Farm at any time that Kristina had had – had
> had or was in a relationship with a – with a gentleman who had a criminal
> background?
>
> A.  No.
>
> **Q. Why not?**
>
> **A.  I didn't think it mattered at the time.  It was just – all we knew of at the time
> initially was a juvenile record.**

(Pl. App. at 22-23).

    Nunn did not learn about the true extent of Lumsden's criminal history until August 2010.

(Pl. App. at 20-21.)  He testified he did not even consider Lumsden as a possible suspect for the theft

until July 23, 2010, when Lumsden came to his house upset, angry, crying, and threatening suicide.

(Pl. App. at 24-25.)  Nunn immediately reported Lumsden to the investigating detective (hardly the

type of conduct one would expect from someone who initially believed Lumsden to be involved in

the theft):

> Q.   Why did the meeting [on July 23, 2010] end after 45 minutes to
> an hour?
>
> A.  During that time that he had said that about the Range Rover, I –

I told him immediately that that's new information and that Detective Latham needs to be contacted immediately and you need to give a statement.

Q. Did you think at the time that Mr. Lumsden told you Kristina was involved in the theft and the arson of the Range Rover that there was any validity to his accusations?

A. I didn't think so, no. There's no validity.

Q. So despite the fact that you didn't think there was any validity, you considered it to be new information that needed to be put into the – the possession of Detective Latham?

A. It's new information. It's not for me to decide. It has to come from him.

(Pl. App. at 29-30).

State Farm actually knew about Lumsden's allegations of his and Paez's involvement before Nunn did. (Pl. App. at 31-33.)[1] Nonetheless, State Farm would like this Court to believe Nunn not telling State Farm Paez dated a guy who had a juvenile harassment record was purposeful concealment and somehow prevented State Farm from deducing it had a frivolous action counterclaim prior to the pleading amendment deadline. State Farm's argument defies common sense.

## 2.   *Legitimate and sustained objections to the discovery of phone records is not concealment.*

State Farm's allegations regarding Nunn's objections to the phone records confusing and unfounded. Nothing in the record establishes Nunn knew Lumsden's number would appear on the

---

[1]Nunn testified Lumsden revealed he had already contacted State Farm prior to July 23, 2010. (Pl. App. at 31-33.) State Farm's motion provides no explanation for why it waited almost six months after knowing about Lumsden and the substance of his allegations to request leave to amend and add the frivolous action counterclaim.

records when he opposed their discovery.  Defendant's Motion seeks to blame Nunn for Paez's refusal to produce her phone records.  *Defendant's Motion* at 5-6.  The Motion goes so far to claim: "In fact, Nunn's lawyer spent thousands of dollars protecting Paez's cell phone records, which would have evidenced this constant communication between Paez and Lumsden, from production." *Defendant's Motion* at 5-6 (citing "Docket Entry No. 156:17-20 of 22").

Document 156, Plaintiffs' Response and Brief in Opposition to Defendant's Motion to Reconsider Magistrate Judge's Pretrial Orders, provides no support for that statement. (Document 156.) The document states Nunn opposed the production of Paez's phone records because Paez was not a party to this case, not a party to the insurance contract, and not seeking coverage under the policy. (Document 156 at 14-18.) It makes no mention of Nunn's lawyer spending thousands of dollars protecting the cell phone records. (Document 156.) It does not even contain twenty pages. (Document 156.) Furthermore, in spite of State Farm's position, the right to privacy remains an important right to parties and non-parties alike to be protected whenever possible.

Insofar as Defendant's reference to the money spent protecting phone records is really an allegation that the response must have taken hours to complete: Nunn's lawyer, unlike State Farm's lawyers, does not bill by the hour. So while defense counsel may have charged her client thousands of dollars for such an eloquently drafted response to a frivolous motion like State Farm's Motion for Reconsideration, it was just part of Nunn's lawyer's job advocating for his client.

Nonetheless, this Court (or its magistrate) denied State Farm's request to compel Paez's phone records on multiple occasions. (Documents 65, 127, 171.) It would not have done so if Nunn's objections did not have merit. State Farm has not presented any testimony showing Nunn knew Paez's phone records would have shown conversations with Lumsden at the time he opposed

their discovery.  Absent such a showing, Nunn's valid objections should not be used against him to allow State Farm to add a counterclaim against him two and a half years into litigation.

### 3. *Lumsden paying for Paez's lawyer does not show Nunn's extra-contractual claims were frivolous.*

Whether or not Lumsden paid for Paez's lawyer has nothing to do with Nunn and nothing to do with State Farm's failure to timely amend its pleadings.  Even if Nunn was present when the lawyer was retained, State Farm has made no showing why Lumsden paying Moraine for Paez equates to Nunn concealing Lumsden's existence or Nunn knowing who stole the car prior to bringing his bad faith claims.  Again, State Farm's argument does not make any sense and does not explain why it did not ask to add the counterclaim before the scheduling order deadline expired or at least when it sought leave of court to untimely amend the first time.

### 4. *Lumsden paying for Paez's replacement car does not show Nunn's extra-contractual claims were frivolous.*

State Farm's Motion fails to explain how Lumsden giving Paez money for a down payment on a vehicle after the theft at all relates to State Farm deciding it needs to allege a counterclaim two and a half years into this litigation.  Even if Paez lied about who paid for the later car, her lie has nothing to do with Nunn.  State Farm's evidence does not show Nunn knew Lumsden gave Paez money nor does it show how Lumsden giving Paez money for the car justifies State Farm claiming Nunn brought a frivolous action.

State Farm incorrectly describes Lumsden as "firmly entrenched" in Nunn and Paez's lives. *Defendant's Motion* at 7.  Nunn testified Lumsden viewed his relationship with Nunn and his wife as much stronger than the Nunns viewed their relationship with him.  (Pl. App. at 26-27.)  Even if Lumsden was close to the Nunn family, which Nunn denies, State Farm has not shown how his

closeness should have led Nunn to suspect him at the outset of this litigation or any time prior to when it moved for summary judgment on the extra-contractual claims.

### 5. *In summary, State Farm's lack of diligence is totally inexcusable.*

In *American Tourmaline Fields v. International Paper Company*, this Court considered whether ATF should be allowed to amend its plea for declaratory relief and counterclaim over one year after the scheduling order deadline passed. *Am. Tourmaline Fields*, 1998 WL 874825, at *1. The evidence showed ATF was aware of the facts alleged to support of the new defenses "well before the scheduling order's deadline expired." *Id.* Accordingly, the Court held ATF's knowledge of the facts prior to the deadline demonstrated it could have complied with the scheduling order. *Id.*

Like the party in *American Tourmaline Fields*, State Farm was aware of the facts alleged in support of its counterclaim for frivolous extra-contractual claims prior to the scheduling order deadline. State Farm concluded this was not a direct or accidental loss and instead was the result of collusion, fraud, misrepresentation, and attempted arson almost a year before the pleading deadline. On March 27, 2008, State Farm adjuster Duke Stone wrote: "Based on the above information it does not appear the IV was stolen, and was damaged by and/or at the direction of the NI's." (Pl. App. at 2.) Similar notes appear throughout Defendant's claim file.

Moreover, State Farm's Auto Claim Committee Report denying Nunn's claim shows State Farm reached the following conclusions in this case approximately two weeks before the deadline to request leave to amend pleadings:

- "Based on the information obtained to date, it does not appear the reported theft loss occurred as reported, and/or the damages were caused by the NI's or at their direction."

- "Considering the statement of facts provided by Wilford Nunn and Kristina Nunn .

> . . the theft did not occur as reported and the damage to the IV was by or at the
> direction of the NI.  It is my recommendation that the claim be denied as it did not
> [] result from a direct and an accidental loss and the insured's failure to comply with
> the General Duties of the policy by failing to cooperate with us in the investigation
> of the claim."

(Pl. App. at 10-15).

If, as State Farm concluded in January 2009, Nunn directed someone to steal the car, then

he had knowledge of who stole the car at the time he filed his lawsuit for bad faith and State Farm

knew it had a claim for frivolous action before the deadline to amend.  State Farm has presented no

explanation as to why it did not request leave to amend its pleadings in the two weeks between the

time it reached its decision and the deadline or even earlier when its own records prove it had

informally decided to deny Nunn's claim.   Nor has it provided any explanation for continuing to

wait another year and a half until Lumsden appeared.  State Farm's given explanation is wholly

inadequate and, thus, this factor weighs in favor of denying the motion for leave.

**B.**     **Importance of Amendment: Giving State Farm its Requested Late Amendment Would
       be Approval of Litigation Abuse.**

State Farm bears the burden to establish good cause which includes the burden to show the

amendment is important.  *Serv. Temps, Inc.*, 2009 WL 3294863, at 1.  It claims its right to seek

sanctions in this case "is vital to prevent litigation abuse" renders this amendment important.

*Defendant's Motion* at 8.  That might be so if it could show litigation abuse occurred.  However,

there is no proof that the litigation abuse on which Defendant rests its tardy amendment.  Defendant

has brought this Court no evidence to show Nunn knew about Lumsden and/or Paez stealing the car

all along but made a claim anyway.  The uncontroverted evidence establishes Nunn learned about

Lumsden being involved <u>after</u> State Farm and immediately reported the development to authorities.

Additionally, State Farm offers no proof as to why allowing it to allege a counterclaim for the dismissed extra-contractual claims (one of which was dismissed based on a lack of damages, not a lack of evidence of misrepresentation) would prevent litigation abuse in this case or any other. Instead it, summarily contends it is entitled to sanctions even though it cannot prove Nunn knew or suspected Lumsden/Paez until July 2010.

In *Rowell v. Metropolitan Life Ins. Co.*, No. H-10-0164, slip op. at 1-2 (S.D. Tex. Jul. 14, 2010), the defendant insurance company sought leave to late amend its answer to assert a counterclaim for erroneously paid benefits against the plaintiff. The insurance company's request came a month and a half late, close to the end of the discovery period, and approximately five months after the lawsuit started. *Id.* Judge Atlas refused to let the insurance company amend. *Id.* at 1. The insurance company argued the amendment was important (in spite of correspondence to the plaintiff saying it would not seek to recover benefits) because the insurer as a plan fiduciary had to enforce the terms of its plan to recover funds that would benefit other plan participants. *Id.* Judge Atlas observed the defendant could not explain why the need to recover benefits from the plaintiff became important after its correspondence, and found the importance factor did not weigh in the defendant's favor.

Like the insurance company in *Rowell* which could not explain why its fiduciary duty to other plan members suddenly became important after stating otherwise, State Farm cannot explain why asserting a counterclaim for an allegedly frivolous action and deterring lawsuit abuse suddenly became important. If deterring lawsuit abuse were so important to State Farm, it would have made its counterclaim from the outset since it has always contended Nunn was involved in the theft.

The real motivation for this late request is not to prevent lawsuit abuse. In short, State Farm

counsel messed up.  It should have asserted a counterclaim against Nunn at the outset of this case because State Farm has always believed Nunn was involved in the theft.  State Farm did not do so, and now claims it had no indication there was alleged law suit abuse justifying a counterclaim until Lumsden appeared.

Of course this amendment is important to State Farm to cure its continued dilatory conduct. However, allowing State Farm to fix a mistake should not weigh in favor of allowing State Farm to amend its lawsuit and allege a claim for damages two and a half years into suit.

## C.     Allowing Amendment to Assert a Counterclaim Prejudices Nunn.

Allowing State Farm to seek monetary damages from Nunn after two and a half years of litigating this case prejudices Nunn. Defendant argues Nunn is not prejudiced because additional discovery is not required and this Court (not the jury) would decide the counterclaim.  *Defendant's Motion* at 8.  That argument fails because "the absence of prejudice to the nonmovant is relevant to Rule 15(a), but it does not fulfill the 'good cause' requirement of Rule 16(b)."  *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

In this case, State Farm's late request for amendment prejudiced Nunn in several ways.  For instance, while State Farm was able to timely move for summary judgment based on Nunn's pleadings, State Farm's late request deprived Nunn from an opportunity to narrow the issues at trial by moving for summary judgment on State Farm's newly alleged counterclaim.  (Document 12.) It also prejudiced Nunn by waiting to amend until after it deposed Nunn a second time and after it deposed Lumsden.  Nunn's counsel may have sought additional testimony from Lumsden and Nunn at the time of the deposition in an effort to rebut the counterclaim.  Nunn's counsel also would have sent additional discovery requests.

Additionally, had the counterclaim seeking damages from him been timely alleged[2] (at the outset of this litigation as State Farm has always stated Nunn was involved), Nunn may have evaluated the cost-benefit analysis of bringing his extra-contractual claims prior to State Farm ever moving for summary judgment..

Given these facts, the prejudice factor clearly weighs against granting State Farm's request to amend.

**D.    A Continuance Will Not Cure Nunn's Prejudice and Will Only Ratify State Farm's Tardy Behavior.**

Allowing State Farm to wholly change its pleadings at this late date would only reward this trial-by-ambush behavior. *See Young v. Brand Scaffold Services, LLC*, No. 1:07-CV-917, slip op. at 3 (E.D. Tex. Feb. 24, 2009).   The counterclaim introduces new issues into the case and will only serve to further delay this trial which is now on permanent hold until State Farm is able to secure yet another deposition of Paez. State Farm has always maintained Nunn knew who stole the vehicle (because it accused him of being involved) at the time he filed the lawsuit.  It should have brought its counterclaim at the outset rather than ambush Nunn two and a half years into litigation.

As a result, this factor also weighs in favor of denying Defendant's motion.

**4.00    DEFENDANT CANNOT SATISFY RULE 15(a)(2).**

Because State Farm failed to satisfy the good cause standard under Rule 16(b)(4), this Court need not consider whether State Farm should be allowed to break and stretch another rule and be allowed to amend under Rule 15(a)(2).  FED. R. CIV. P. 15(a)(2).  Regardless, State Farm does not

---

[2]Nunn continues to maintain he was not involved in the theft/arson and did not know of Paez and/or Lumsden's involvement until July 2010.

meet the standard for allowing amendment under Rule 15(a)(2) on the facts before this Court. Not only does State Farm allege a new counterclaim arising out of conduct, transactions, and occurrences not set forth in its original pleading, Nunn is prejudiced.

The same facts that support finding prejudice under Rule 16(b)(4) also support finding prejudice to Nunn under Rule 15(a)(2). Accordingly, Nunn asks this Court to deny Defendant's Motion.

## 5.00   PRAYER

For these reasons, Nunn asks this Court to deny Defendant's Motion for Leave to file its very, very late counterclaim.

Respectfully submitted,

_____/s/ Alfred W. Ellis_____

Alfred W. Ellis
State Bar No. 06560000
*Of Counsel*
SOMMERMAN & QUESADA, L.L.P.
3811 Turtle Creek Boulevard, Suite 1400
Dallas, Texas 75219-4461
*Telephone*:     (214) 720-0720
*Facsimile*:     (214) 720-0184
*E-mail*:        al@textrial.com
ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has this date been sent to all attorneys of record in the above-styled and numbered matter, said service being effected in the following manner:

| | |
|---|---|
| Certified Mail/Return Receipt Requested |    X    |
| Hand Delivery | _____ |
| Telecopy | _____ |
| Regular Mail | _____ |

DATED: __12-22-2010__

_____/s/ Alfred W. Ellis_____

PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER TO INCLUDE COUNTERCLAIM

PAGE 20